IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGELICA ANAYA ALLEN, et al.,

        Plaintiffs,

v.                                                                                 No. CIV 04-19 LFG/WDS

NANCY BAER TRUCKING INC. and
BRENDA SUE LEACH,

        Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendant Nancy Baer Trucking Inc.'s ("Defendant" or "Nancy Baer") Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed May 26, 2005. [Doc. Nos. 41, 42.] The motion is fully briefed. Plaintiffs Angelica Anaya Allen and her three children ("Plaintiffs" or "Ms. Allen") filed two separate responsive pleadings. [Doc. Nos. 54, 55.] Defendant filed its reply on June 20, 2005. [Doc. No. 60.] After careful consideration of the pleadings, attachments and pertinent law, the Court concludes the motion to dismiss should be denied. The Court's reasoning is set out below.

### Background

This lawsuit arises out of a motor vehicle accident that occurred on February 5, 2001 in Albuquerque, New Mexico. Ms. Allen was driving a Subaru station wagon, with her three children,

when they were involved in a collision with a semi-truck, driven by Defendant Leach. Plaintiffs' Complaint for Money Damages alleges a claim of negligence against Defendant truck driver Leach.[1] The Initial Pre-Trial Report clarifies that Plaintiffs seek to hold Defendant Nancy Baer vicariously liable for Leach's alleged negligence. [Doc. No. 22.]

Plaintiffs allege that they suffered physical and emotional pain and suffering as a result of the accident. More specifically, Ms. Allen alleges that she has been diagnosed with post-traumatic stress disorder ("PTSD") stemming from the collision, that her child Genevieve suffered a back injury, that her son Patrick had glass imbedded in his arm from the accident, and that her youngest daughter Irene experienced emotional injury in the form of nightmares after the accident. [Doc. No. 1.] Plaintiffs request monetary damages for alleged physical and emotional pain and suffering, medical bills incurred to date and expected to be incurred in the future, lost wages for Ms. Allen, and an award of punitive damages. [Doc. No. 1, pp. 2-3.]

Plaintiffs filed this lawsuit in federal court based on diversity jurisdiction. The Complaint states that the "matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332," i.e., $75,000. [Doc. No. 1, ¶ 3.] Defendant's motion to dismiss for lack of subject matter jurisdiction challenges Plaintiffs' jurisdictional allegations as to the amount in controversy based on information obtained through discovery.

---

[1] While Brenda Sue Leach is named as a Defendant in this case, she was never served with process, and the Court issued an Order directing Plaintiffs to show cause why the Complaint against her should not be dismissed, without prejudice. [Doc. No. 57.]

**Analysis**

**I.      Legal Standard - Diversity Jurisdiction**

In order to satisfy the requirements of diversity jurisdiction under § 1332, a plaintiff must allege facts that show the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. § 1332. The amount in controversy requirement is usually satisfied if the plaintiff makes a good-faith claim that the amount is satisfied. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938). The amount in controversy is determined when the complaint is initially filed,[2] but that does not prevent a party from later raising a subject matter jurisdiction challenge based on failure to meet the jurisdictional minimum. See United States v. Burch, 169 F.3d 666, 668 (10th Cir.1999) ("[c]hallenges to a district court's subject matter jurisdiction may be raised at any time"; "[s]ubject matter jurisdiction may not be conferred on a federal court by stipulation, estoppel, or waiver"); 15 Moore's Federal Practice § 102.103 (Matthew Bender 3d ed.1997) (jurisdictional minimum required for federal subject matter jurisdiction, and as such, it is not subject to waiver, and the issue may be raised at any time). See also Watson v. Blankinship, 20 F.3d 383, 387-88 (10th Cir. 1994) (a distinction is made between subsequent events that change the amount in controversy, e.g., dismissal of claims, and "subsequent revelations that . . . the required amount was or was not in controversy at the commencement of the action") (internal citation omitted); 15 Moore's Federal Practice § 102.104[2], [3].

---

[2]Stated differently, the fact that a court might later dismiss certain claims upon a motion for summary judgment or that a jury might award an amount under the jurisdictional amount, would not defeat a Court's subject matter jurisdiction, which is determined at the time the complaint is filed. See Watson, 20 F.3d at 387 (jurisdiction is not destroyed merely because the court dismisses certain claims that reduce the amount of potential recovery or because the jury does not award the plaintiff the required amount). However, if a plaintiff who originally filed in federal court and who ultimately recovers less than the jurisdictional minimum, may be denied costs. Indeed, the court could impose costs on the plaintiff under those circumstances. Fischer v. First Chicago Capital Mkts., Inc., 195 F.3d 279, 285 (7th Cir. 1999).

If a party challenges federal subject matter jurisdiction based on the amount in controversy requirement, "the plaintiffs must show that it does not appear to a legal certainty that they cannot recover at least [the jurisdictional minimum of $75,000]." Watson v. Blankinship, 20 F.3d at 386. The United States Supreme Court also discussed the "legal certainty" test, stating that if it is not apparent "to a legal certainty" from the face of the pleadings, or after proof has been given that a plaintiff cannot meet the jurisdictional amount, then the suit should be dismissed for lack of subject matter jurisdiction. St. Paul, 303 U.S. at 288-89; Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir.), *cert. denied*, 516 U.S. 863 (1995). Thus, it is Plaintiffs' burden here to show that "it is not legally certain that the claim is less than the jurisdictional amount." Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003).

The Tenth Circuit has observed that the "legal certainty" test is very strict and that "it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied." Id. "There is a strong presumption favoring the amount alleged by the plaintiff." Id. at 1217 (internal citations omitted). "Generally, dismissal under the legal certainty[3] standard will be warranted only when a contracts limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." Id. at 1216 (*citing* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3702, at 98-101 (3d ed.1998)).

---

[3]In Woodmen, the Tenth Circuit set forth the definition of certainty as provided by Black's Legal Dictionary: "Absence of doubt; accuracy; precision; definite. The quality of being specific, accurate, and distinct." Id. at 1217 n. 2.

4

## II.     Defendant's Rule 12(b)(1) Motion to Dismiss

In Holt v. United States, 46 F.3d 1000 (10th Cir.1995), the Court discussed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The Court explained that such motions take two forms.

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03 (internal citations omitted). Here, Defendant does not make a facial challenge to the complaint, but instead raises a factual challenge to the existence of subject matter jurisdiction, based on evidence discovered of Plaintiffs' alleged injuries. Thus, the Court examines the documents attached to the pleadings in determining this matter.

## III.    Discussion

Nancy Baer argues Plaintiffs' damages claims do not come close to meeting the jurisdictional minimum. As an initial matter, the Court agrees with Defendant that separate and distinct claims of two or more plaintiffs may not be aggregated to satisfy the amount in controversy requirement. Snyder v. Harris, 394 U.S. 332, 335, 336-37 (1969), *reh'g denied*, 394 U.S. 1025 (1969). Thus, in

5

this case, Plaintiffs cannot aggregate all of their claims for damages in order to meet the jurisdictional minimum. Instead, each Plaintiff's claim for damages must satisfy the amount in controversy.

The Court also agrees with Nancy Baer that Plaintiffs' claim for punitive damages, under the circumstances of this case, should not be considered in determining whether the amount in controversy exceeds the jurisdictional minimum. The Court acknowledges that generally a claim for punitive damages would be considered in evaluating the amount in controversy requirement. Watson, 20 F.3d at 386. However, in order to add the possibility of an award of punitive damages, a plaintiff must present some factual evidence of entitlement to punitive damages. Anthony v. Security Pacific Financial Services, Inc., 75 F.3d 311, 315-18 (7th Cir. 1996). Here, there is no such evidence. Instead, Plaintiffs' claim that the driver of the semi-truck was negligent by failing to yield to the car driven by Plaintiffs. [Doc. No. 1, ¶¶ 4, 5.] Plaintiffs allege only that the vehicle driven by Leach "was operated in a negligent manner." [Doc. No. 1, ¶ 5.]

In Plaintiffs' response brief, they argue that when the Complaint was filed "there was evidence the semi-truck driver acted recklessly and willfully by pulling into oncoming traffic without being able to adequately see oncoming traffic." Yet, if this type of evidence was known when Plaintiffs filed the Complaint, it is unclear why the allegations were not set forth in the Complaint. Moreover, Plaintiffs provide no actual "evidence" of reckless or willful conduct, sufficient to satisfy a claim for punitive damages.[4] Rather, Plaintiffs present only argument of counsel which does not persuade the Court

---

[4] To succeed on a claim for punitive damages, Plaintiffs would have to provide evidence of malicious, willful, reckless, wanton, fraudulent or bad faith conduct. UJI 13-1827.

6

that a claim for punitive damages should be considered in determining the amount in controversy in this case.[5]

That leaves Plaintiffs' claims for physical and emotional injuries and the claim for lost wages by Ms. Allen. Even with the presumption in favor of Plaintiffs and the strict "legal certainty" test set out by the Tenth Circuit, the Court finds Plaintiffs' position very weak in meeting their burden to show that "it is not legally certain that the claim is less than the jurisdictional amount."

Defendant presents evidence that Ms. Allen was treated eight times by a chiropractor for complaints relating to a neck and back injury associated with the accident. Since obtaining treatment for those injuries, Ms. Allen has engaged in sporting activities including skiing in 2001, kayaking in 2002 and snowboarding in 2004. Ms. Allen testified that she plays soccer currently, runs three times a week and exercises three times a week.

Ms. Allen also claims that she suffers from PTSD in relation to the accident and now (as of the time of Plaintiffs' response) "possible brain damage."[6] With respect to emotional injuries, Ms. Allen visited a clinical counselor twelve times between February 7, 2002 and April 29, 2003, and was treated by a psychiatrist four times during this same period of time. In January 2005, Ms. Allen began seeing another psychologist because of a traumatic experience she suffered in August 2004 involving a backpacking trip to Alaska where Ms. Allen apparently encountered a grizzly bear.

---

[5] Indeed, Plaintiffs attached no affidavits or any type of evidence to their response briefs that might have rebutted the evidence attached by Defendant to its opening motion and brief.

[6] According to Defendant, Plaintiffs have not provided any objective medical evidence showing that Ms. Allen was diagnosed with or treated for "possible brain damage."

Ms. Allen's total medical costs for counseling sessions, emergency room care and chiropractic care are $2,800.57, including a massage and prescription costs.[7] Plaintiffs also claim that Ms. Allen seeks $30,954.49 in lost earnings and loss of earning capacity. Thus, the total damages claimed are: $33,755.06.

The Court observes that Ms. Allen's interrogatory responses show that she has a claim for actual lost wages in the amount of $3,192.16. She further states:

> Before the collision on February 5, 2001, I was the Executive Director of New Mexico Legal Aid and continued in that position until 2002 when New Mexico Legal Aid was restructured. At the time of the restructuring, I was asked to apply for the position of Executive Director, but due to problems dealing with stress, I did not apply for the Executive Director position when the corporate structure of Legal Aid Society of Albuquerque changed. I lost potential earnings, therefore, of $14,428.96 in 2003 and of $8,333.37 in 2004. I lost earnings of $5,000 in 2005 (75,000-70,000), for a total of $27,762.33.

[Ex. B to Defendant's Memorandum.] Thus, Plaintiffs arrive at the figure of $30,954.49 in lost wages claimed by Ms. Allen.

Ms. Allen's claimed lost wages are speculative to say the least. The claim for lost wages in the amount $27,762.33 (minus the actual lost wage claim) relies on inference upon inference. For example, it relies on the inference that the stress Ms. Allen incurred and that supposedly prevented her from applying for a job can be proven to a reasonable degree of medical probability to have been caused by the accident. Yet, Plaintiffs have identified no medical expert who will testify. In addition, the lost wage claim relies on the inferences that Ms. Allen would have applied for the position, would have obtained the job, would have been paid $75,000, and would have continued to work in the

---

[7] The Court does not discuss the childrens' alleged injuries and damages since they appear to be minimal and cannot be aggregated in any event.

8

position through some part of 2005. Again, it is noteworthy that Plaintiffs have not identified an economic expert either.

This simply is not the type of evidence that would support a claim for lost wages. A jury's verdict as to damages "must be based upon proof and not upon speculation, guess or conjecture." UJI 13-1802. Based on Plaintiffs' responses to interrogatories, it seems likely that a significant portion of her claimed lost wages are nothing more than speculative.

Nonetheless, Ms. Allen has a claim for PTSD related to the accident and will have health care providers testify as to their treatment of that condition. In addition, she has a claim of pain and suffering that is difficult for the Court to quantify. There is no mathematical rule or formula for computing such damages in a negligence case, and a plaintiff is entitled to reasonable compensation for bodily injuries, as well as pain and suffering. *See, e.g.,* UJI 13-1807. In view of the presumption in favor of finding the jurisdictional minimum has been met and the fact that there is no limitation on the amount of damages Plaintiffs might be able to recover on their pain and suffering claims, the Court is reluctant to remove this case from a jury's determination. This does not mean, however, that the case will proceed at the end of Plaintiffs' presentation of evidence. The Court will carefully review and consider any appropriate motions at the close of Plaintiffs' case.

## Conclusion

The Court, therefore, concludes that, *albeit* questionable, Plaintiffs have shown that "it is not legally certain that the claim is less than the jurisdictional amount." Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

IT IS THEREFORE ORDERED that Defendant Nancy Baer Trucking Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 41] is DENIED.

*/s/ Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge